UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DRYWALL TAPERS AND PAINTERS OF GREATER NEW YORK LOCAL UNION 1974, AFFILIATED WITH INTERNATIONAL UNION OF ALLIED PAINTERS AND ALLIED TRADES, AFL-CIO AND TRUSTEES OF THE DRYWALL TAPERS *and* PAINTERS LOCAL UNION NO. 1974 BENEFIT FUNDS,

Petitioners,

-v-

PAR WALL FINISHING INC. *a/k/a* PAR WALL FINISHERS CORP.,

Respondent.

25 Civ. 9833 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves cross-motions to confirm or vacate a labor-arbitration award. Petitioners Drywall Tapers and Painters of Greater New York Local Union 1974, Affiliated with International Union of Allied Painters and Allied Trades, AFL-CIO (the "Union") and Trustees of the Drywall Tapers and Painters Local Union No. 1974 Benefit Funds (the "Trustees") (collectively, "petitioners") move to confirm a $285,529.82 award against respondent Par Wall Finishing Inc. ("Par Wall"). An arbitral panel found that Par Wall owes petitioners that amount under a collective bargaining agreement (the "agreement"), for failure to pay certain benefits. Dkt. 2-1 ("Award") at 2–7. Par Wall cross-moves to vacate the Award.

For the following reasons, the Court grants petitioners' motion to confirm the Award, and denies Par Wall's cross-motion to vacate it.

## I. Background

### A. The Parties

The Union is a labor organization that represents employees in the drywall taping and painting industry. Dkt. 1 ("Pet.") at 2. Its principal office is in Manhattan. *Id*.

The Trustees are the fiduciaries of jointly administered multi-employer, labor-management trust funds. *Id*. These funds were established, and are maintained, by various employers, including Par Wall, and include employee benefit plans and multi-employer plans. *Id*.

Par Wall is a drywall company with offices in Greenlawn, New York. *Id*. at 2–3.

### B. The Collective Bargaining Agreement Between the Union and Par Wall

On June 27, 2023, Par Wall entered into the operative collective bargaining agreement with the Union.[1] Dkt. 2 ("Kugielska Decl.") ¶ 4. Articles 13 and 14 of the agreement set out employer-employee dispute resolution procedures. Dkt. 2-2 ("Agreement") at 25–32. They provide that all employee grievances are first referred to the Union. *Id*. at 25. If the Union cannot settle the claims, the matter is referred to an initial arbitral panel, the Joint Trade Committee ("JTC"). *Id*. The JTC is comprised of two chairpersons—one representing the employer (or its association), and the other representing the Union. *Id*. at 26. After an evidentiary hearing at which both sides may present evidence and argument, the JTC renders a decision (and, if appropriate, an award). *Id*. at 27. If the JTC cannot decide within 30 days after the close of the hearing, or otherwise becomes deadlocked, it submits the grievance to another arbitral body, the Joint Trade Board ("JTB"), which "shall render an award." *Id*. at 28. The JTB

[1] This is the third collective bargaining agreement between the Union and Par Wall. The first covered June 28, 2017 through June 27, 2020. Agreement at 2. The second covered September 28, 2020 to June 27, 2023. *Id*. at 54. The third, and operative, agreement took effect on June 28, 2023. *Id*.

is comprised of at least two members representing the employer's association and at least two members representing the union, in equal numbers. *Id*. at 25.[2] Under Section 3(c) of Article 13, all JTC and JTB awards "shall be final and binding." *Id*. at 28.

### C. The Arbitration

On May 30, 2025, Richard Jacobs, a Union representative, submitted a demand for arbitration to the JTC, based on Par Wall's alleged failure to pay fringe benefit contributions to 40 Union employees between 2023 and 2025, in violation of Articles 20 and 13 of the Agreement. Dkt. 2-3 ("May 30 Demand") at 2. The demand was served on Par Wall. Dkt. 20 ("Kugielska Reply Decl.") ¶ 6. The JTC scheduled an arbitral hearing for June 17, 2025, and, on May 30, 2025, notified Par Wall of the hearing date. Award at 3.

On June 17, 2025, the date of the hearing, Brian Gordon, Par Wall's president, served as an employer-association representative on the JTB for multiple hearings involving unrelated employer-employee disputes. *See* Dkt. 17 ("Gordon Decl.") ¶ 6. Before the hearing on this grievance, Gordon told John Drew—a Union representative who was acting as the Union chair that day, *see* Dkt. 21 ("Drew Decl.") ¶ 7—that Gordon "assumed the Par Wall hearing would be postponed" to "avoid conflicting interests," insofar as Gordon was scheduled to serve as a panelist that day. Gordon Decl. ¶ 6. Gordon's adjournment request was denied. *Id.* Gordon attests that the reason he was given was that the matter was "too big." *Id.* Drew attests that he denied Gordon's same-day request for a postponement to avoid "further delay[ing] the payment of wages and benefits" owed to 40 Union members. Drew Decl. ¶ 5.

[2] Section 2 of Article 13 states that the JTB is comprised of three members from the employer's association and three members from the union. Agreement at 25. Section 5 of Article 14 states: "Notwithstanding anything to the contrary, a proper quorum of the [JTB] shall consist of any number not less than two but equal from the [employers'] associations and the union, and in which case the decision of such number shall have the same force and effect as if the whole three from the associations and the union had acted." *Id.* at 32 (cleaned up).

At the start of the Par Wall hearing, Gordon attests, he was "directed to leave the hearing room." Gordon Decl. ¶ 6. No Par Wall representative attended the hearing. *See id.* ¶¶ 8–9. The JTC thus consisted of two panelists, serving as co-chairs—Drew, the Union panelist; and John DeLollis, the employer association's panelist. Drew Decl. ¶ 7.

In support of the Union's grievance, Jacobs offered shop steward reports, which reflected that Par Wall owed but had not paid fringe benefit contributions as required under the agreement. Dkt. 22 ("Jacobs Decl.") ¶ 4. The JTC did not issue a decision that day. Drew Decl. ¶ 8. It gave Par Wall two weeks to submit a rebuttal, including any supporting evidence, to Jacobs. Jacobs Decl. ¶ 5.

On July 7, 2025, Par Wall submitted a rebuttal to Jacobs by email. Dkt. 17-1 ("July 7 Email") at 2. The rebuttal admitted that the grievance was accurate with respect to contributions Par Wall owed to five of the 40 employees listed in the grievance. *Id.* at 4–5. It argued that, as to 10 other employees, it owed less in contributions than the grievance alleged. *Id.* As to three other employees, it stated that it had "no record of [them] working for us." *Id.* Par Wall's rebuttal did not mention the remaining 22 employees listed in the grievance. *See id.*

The rebuttal did not attach any supporting records. *Id.* Union representatives then requested back-up documentation from Par Wall to support the ostensible discrepancies it had noted. They gave Par Wall two weeks to submit those materials, and offered to meet to discuss Par Wall's submission. Jacobs Decl. ¶ 7. Par Wall, however, did not submit any additional documentation. *Id.* ¶ 8.[3]

[3] The record does not make clear whether, or how, Par Wall's unsubstantiated rebuttal was transmitted to the arbitrators.

### D. The Award

On July 29, 2025, the JTB issued its decision resolving the Union's grievance. Award at 3. In a section titled "Contentions of the Parties," it listed the names, weeks worked, hours worked (straight time and overtime), and owed benefits for 40 employees. *Id.* at 4–6. For each, it found that Par Wall had failed to provide "fringe benefits," in violation of Articles 13 and 20 of the agreement. *Id.* at 6. It directed Par Wall to pay $139,764.91 in benefits to the Trustees, and $139,764.91 in fines and $6,000 in liquidated damages to the JTB. *Id.*

On August 5, 2025, the Union served the Award on Par Wall by first class and certified mail. Kugielska Reply Decl. ¶ 12; *see also* Dkt. 2-4 ("Transmittal Letter") at 2. On October 20, 2025, after Par Wall did not pay any of the sums awarded, the Union served a demand letter on Par Wall. Dkt. 2-5 ("Oct. 20 Demand") at 1–2. The letter attached the Award and demanded payment by November 3, 2025. *Id.* It stated that, consistent with the agreement, the Union would withhold labor from Par Wall if it did not comply with the Award, and that, in the event of continued noncompliance, "the Union will have no choice other than to initiate litigation." *Id.*

To date, Par Wall has not paid any part of the sum awarded by the panel. Kugielska Reply Decl. ¶ 13.

### E. This Litigation

On November 25, 2025, petitioners initiated this lawsuit. Dkt. 1. It was served on Par Wall on December 25, 2025. Dkt. 10. In the petition, petitioners moved to confirm the Award, under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. Dkt. 1; *see also* Dkt. 2 (declaration and exhibits). On January 23, 2026, Par Wall opposed the petition, and cross-moved to vacate the Award. Dkts. 16 ("Opp'n"), 17 (Gordon declaration and exhibit). On February 19, 2026, petitioners replied. Dkts. 20–22 (declarations and exhibits), 23 ("Reply").

## II. Applicable Legal Standards

Arbitral awards are not self-enforcing, and must therefore "be given force and effect by being converted to judicial orders by courts." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). Section 301 of the LMRA "provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Loc. 802, Assoc. Musicians v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998) (citing *Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Loc. 261*, 912 F.2d 608, 612 (2d Cir. 1990)); *see* 29 U.S.C. § 185. Federal courts also look to the FAA "for guidance in labor arbitration cases," especially when the LMRA "empowers the federal courts to fashion rules of federal common law to govern '[s]uits for violation of contracts between an employer and a labor organization' under the federal labor laws." *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987) (citation omitted).

Such review is "severely limited, so as not to frustrate the twin goals of arbitration"—"namely, settling disputes efficiently and avoiding long and expensive litigation." *Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins.*, 668 F.3d 60, 71–72 (2d Cir. 2012) (citation omitted); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an [arbitrator's] decision great deference."). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co.*, 462 F.3d at 110 (citation omitted); *see also* 9 U.S.C. §§ 9–11. Accordingly, "[t]he showing required to avoid summary confirmation of an arbitration award is high." *Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12 (2d Cir. 1997).

In the context of labor arbitration disputes, "federal policy in favor of enforcing arbitration awards is particularly strong." *N.Y. Hotel & Motel Trades Council v. Hotel St. George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997) (citing *Misco, Inc.*, 484 U.S. at 37 (1987)). Because the LMRA "embodies a 'clear preference for the private resolution of labor disputes,'" judicial review of arbitral awards in this context is "among the most deferential in the law." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 532, 536 (2d Cir. 2016) (quoting *Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998)).

A court therefore must confirm an award if there is "even a barely colorable justification for the outcome reached." *Willemijn Houdstermaatschappij, BV*, 103 F.3d at 13 (quoting *Matter of Andros Compania Maritima, S.A.*, 579 F.2d 691, 704 (2d Cir. 1978)). "As long as the award draws its essence from the collective bargaining agreement and is not merely the arbitrator's own brand of industrial justice, it must be confirmed." *Nat'l Football League Mgmt. Council*, 820 F.3d at 537 (cleaned up). "Generally speaking, unless the award is procured through fraud or dishonesty, the decision should not be disturbed." *Loc. 97, Int'l Bhd. of Elec. Workers, A.F.L.-C.I.O. v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999) (citation omitted).

## III. Discussion

Par Wall opposes petitioners' motion to confirm the Award, and cross-moves for vacatur of it, on three grounds. Opp'n at 1–6. It argues that (1) the panel did not follow procedures required by the collective bargaining agreement and thus exceeded its authority; (2) the panel's refusal to postpone the hearing made the proceedings fundamentally unfair; and (3) the Award errantly included individuals who were not employed by Par Wall. *Id*.

Petitioners counter that Par Wall's arguments are time barred, because Par Wall moved outside the 90-day period that New York law gave it to oppose enforcement of a labor arbitration

award. Reply at 10–11. On the merits, they argue that Par Wall's arguments fail for three reasons: because (1) the JTC complied with the procedures under the collective bargaining agreement; (2) the panel validly exercised its discretion to deny Par Wall's same-day adjournment request; and (3) Par Wall did not submit any documentation substantiating its claim that the Award included persons who had not worked for it. *Id.* at 5–16. Petitioners also seek attorneys' fees and costs associated with this action, and interest on the amount due to them. *Id.* at 16–17.

**A. Whether Par Wall's Objections to the Award Are Time-Barred**

Because § 301 of the LMRA does not supply a statute of limitations, courts in this Circuit look to state law to set the limitations period. *Parker Meridien Hotel*, 145 F.3d at 88; *see Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA)*, 47 F.3d 14, 16 (2d Cir. 1995). It is well settled, in connection with labor arbitral awards, that section 7511(a) of New York's Civil Practice Law and Rules ("N.Y. CPLR") supplies the appropriate statute of limitations. *See Harry Hoffman Printing, Inc.*, 912 F.2d at 612; *see also Parker Meridien Hotel*, 145 F.3d at 88. It states: "An application to vacate or modify an [arbitration] award may be made by a party within ninety days after its delivery to him." N.Y. CPLR 7511(a) (McKinney 2026).

The 90-day limitation period is strictly enforced and is not subject to any exceptions. *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984). "When the three month limitations period has run without vacation of the arbitration award, the successful party has a right to assume the award is valid and untainted, and to obtain its confirmation in a summary proceeding." *Id.* at 177. And "grounds for vacating an arbitration award may not be raised as an affirmative defense" after 90 days. *Parker Meridien Hotel*, 145 F.3d at 89. As the Second Circuit has explained, permitting defendants to assert affirmative defenses to confirmation after

expiration of the statute of limitations for moving to vacate an award would be "inimical to the important federal interests of promoting resolution of labor conflicts quickly and effectively through arbitration." *Id*.

The Award here was issued on July 29, 2025. Award at 2. On August 5, 2025, petitioners' counsel served it on Par Wall by first class and certified mail with return receipt. Kugielska Reply Decl. ¶ 12; Transmittal Letter at 2; Gordon Decl. ¶ 10 ("On August 5, 2025, Par Wall received an award letter issued by the Joint Board concerning the Par Wall matter."). Even assuming *arguendo* that Par Wall did not receive the Award until the later of those two dates, Par Wall's deadline to move for vacatur of the Award or to raise affirmative defenses to a confirmation petition was November 3, 2025 (90 days later). *See Parker Meridien Hotel*, 145 F.3d at 89; N.Y. CPLR 7511(a) (McKinney 2026).

Par Wall, however, did not move for vacatur (or raise affirmative defenses) until January 23, 2026, some 81 days after the deadline to do so (and 29 days after being served in this case). That day, its counsel opposed this petition and moved for vacatur. *See* Opp'n. And tellingly, Par Wall does not contest that its affirmative defenses and vacatur motion are time barred. Nor does it articulate any justifications for its untimeliness.

The Court accordingly finds Par Wall's cross-motion to vacate the Award—and its affirmative defenses to confirmation—time barred. *See, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Everlast Scaffolding, Inc.*, No. 26 Civ. 781, 2026 WL 1961873, at *7 (S.D.N.Y. July 7, 2026) (confirming labor arbitral award where affirmative defenses time barred); *N.Y. Hotel & Gaming Trades Council, AFL-CIO v. 123 Washington LLC*, No. 24 Civ. 7213, 2025 WL 2223248, at *11 (S.D.N.Y. Aug. 5, 2025) ("*123 Washington*") (same); *Trs.*

*of N.Y.C. Dist. Council of Carpenters Pension Fund v. Advanced Constr. Equip. Corp.*, No. 25 Civ. 2640, 2025 WL 2922830, at *6 & n.3 (S.D.N.Y. Oct. 15, 2025) (same).

**B. Whether Any Grounds for Vacatur Exist**

Notwithstanding the untimeliness of Par Wall's motion, the Court has an independent obligation to assess petitioner's motion for confirmation. A court must confirm an arbitral award "unless the award is vacated, modified, or corrected." *D.H. Blair & Co.*, 462 F.3d at 110 (citation omitted); *see also* 9 U.S.C. §§ 9–11. Applying the highly deferential standard that courts must use when reviewing labor arbitral awards, the Court does not find any grounds for vacatur, modification, or correction. Par Wall's arguments for such relief—which the Court has considered notwithstanding the time bar—are meritless.

First, the JTC followed the procedural requirements of the collective bargaining agreement in conducting the hearing. Consistent with Article 13 of that agreement, the panel was comprised of two chairs—a representative of Par Wall's employer association (John DeLollis) and a Union representative (John Drew). Nothing about the constitution of the panel during the hearing flouted, let alone willfully, any material terms of the parties' agreement. *Stolt-Nielsen, S.A. v. AnimalFeeds, Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010). Par Wall separately claims that the *JTB*, which later issued the Award, lacked adequate representation from the employer association because Section 5 of Article 14 of the agreement required the JTB to have at least two representatives from each side, whereas the Award only lists one from each side. Opp'n at 2–3; Agreement at 32. Even assuming *arguendo* that Par Wall's reading of the agreement is correct, it forwent the opportunity to raise that procedural objection by not doing so within the 90-day limitations period. "The Second Circuit has long held that a failure to make a timely objection to the selection of an arbitrator precludes a party from later vacating the arbitral award on the basis that the arbitrator was improperly chosen." *Malone v. Credit Suisse Sec.*,

No. 18 Civ. 6872, 2019 WL 463434, at *2 (S.D.N.Y. Feb. 5, 2019) (citing *Cook Indus., Inc. v. C. Itoh & Co.*, 449 F.2d 106, 107–08 (2d Cir. 1971)); *Garfield & Co. v. Wiest*, 432 F.2d 849, 853 (2d Cir. 1970); *see also Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 191 (2d Cir. 2013) ("Because arbitrators derive their authority from the contractual agreement of the parties, a party may waive its right to challenge an arbitrator's authority to decide a matter by voluntarily participating in an arbitration and failing to object on the grounds that there was no agreement to arbitrate." (cleaned up)). The JTC was properly constituted, and Par Wall waived its right to argue that any ostensible defect in the JTB's composition warrants vacatur. *See, e.g.*, *Malone*, 2019 WL 463434, at *5 (confirming award and denying vacatur motion—notwithstanding that the panel had only one "public" arbitrator, not the requisite two—because petitioner waived objection to such); *Elnenaey v. Fid. Brokerage Servs., LLC*, No. 23 Civ. 6970, 2024 WL 3675947, at *7 (S.D.N.Y. Aug. 6, 2024) (same, where losing party in arbitration waived its right to object to panel's composition based on arbitrator's ostensible conflict); *see also Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 368 (2d Cir. 2003) ("if a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration").

Second, the panel did not commit misconduct by denying Gordon's last-minute request to postpone the hearing. Arbitrators have "broad latitude to grant or deny parties' adjournment requests at their discretion." *Rai v. Barclays Capital, Inc.*, 739 F. Supp. 2d 364, 371 (S.D.N.Y. 2010) (citing *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir. 1997)). Courts thus "will not interfere with an award on these grounds as long as there exists a reasonable basis for the arbitrators' refusal to grant a postponement." *Id.* (citation omitted). On the record before the Court, Gordon did not seek an adjournment of the hearing until the date of

the hearing. The record does not reflect any reason for the lateness of the adjournment request. And the panel's stated reason for its discretionary decision to deny the request was facially sound: petitioners had claimed a substantial benefits deficit, and maintaining the date stood to avoid further delay in Par Wall's payment of any unpaid fringe benefit contributions that were established.

Moreover, the panel gave Par Wall a reasonable opportunity after that denial to present evidence supporting the company's objections to the petitioners' claims. It allowed Par Wall two weeks to submit a rebuttal with supporting evidence. And, when Par Wall submitted a letter rebuttal devoid of any corroborating documentation, Par Wall was given an opportunity to supply such evidence, and another two weeks in which to do so. Par Wall did not submit any supporting evidence, or engage further with the Union or panel. On the record before the Court, Par Wall did not articulate any explanation for its failure to do so. Under these circumstances, in which Par Wall had a sufficient opportunity to present its case before the panel rendered a decision, the panel's denial of Gordon's adjournment request was reasonable. *See, e.g.*, *Rai*, 739 F. Supp. 2d at 374–75 (denial of postponement request reasonable where party had adequate opportunity to present evidence).

Third, Par Wall's argument—that the panel's Award provided relief to persons whom it did not employ—does not justify vacatur. It is instead an impermissible "evidentiary appeal[]" of the JTB's factual findings, which were based on evidence presented by petitioners, and as such reflected a reasonable weighing of concrete evidence. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)). To overturn an award, "it is not enough . . . to show that the [panel] committed an error—or even a serious error." *Id.* (quoting *Stolt-Nielsen*, 559 U.S. at 671) (cleaned up). So

long as the arbitration award "draw[s] its essence from the contract," a court may not overturn it. *Id.* (citation omitted).

Here, Par Wall conceded that it owed certain unpaid fringe benefit contributions to some employees, but it disagreed with the amounts it assertedly owed to others, and argued that three individuals listed in the grievance had never been Par Wall employees. However, despite being invited to submit supporting documentation (such as payroll records) and being given two weeks to do so, Par Wall did not offer any evidence substantiating its claims. In these circumstances, it was reasonable for the JTB to credit the evidence adduced by the Union—its shop steward reports—over Par Wall's unsubstantiated say-so. The panel did not err, let alone commit "serious error," in doing so. *Id.*

There are thus no grounds for vacatur or modification of the Award. The Court thus grants the motion to confirm the Award. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Everlast Scaffolding Inc.*, No. 24 Civ. 1321, 2025 WL 903297, at *14–15 (S.D.N.Y. Mar. 25, 2025) (confirming arbitral award where cross-motion to vacate was time barred and panel acted within scope of its authority in issuing award); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. High Performance Floors Inc.*, No. 15 Civ. 781, 2016 WL 3194370, at *5–6 (S.D.N.Y. June 6, 2016) (same); *123 Washington*, 2025 WL 2223248, at *11 (same).

### C. Whether Petitioners Are Entitled to Attorneys' Fees and/or Costs

Petitioners move for attorneys' fees and costs associated with this action, on the ground that Par Wall refused to comply with the arbitration Award without justification.

***Attorneys' fees***: In federal actions generally, "attorneys' fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Int'l Chem. Workers Union, Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985) (citation omitted). Section 301 of the LMRA does not provide for the recovery of attorneys' fees. *Id.*; *see* 29

U.S.C. § 185. However, an award of attorneys' fees may be proper where the parties' collective bargaining agreement requires such. *See, e.g.*, *N.Y.C. Dist. Council of Carpenters v. JFD Sales Consulting Servs. Corp.*, No. 17 Civ. 3733, 2017 WL 4736742, at *2 (S.D.N.Y. Oct. 19, 2017); *Trs. of Empire State Carpenters Annuity v. Bayview Custom Constr. Corp.*, No. 15 Civ. 6574, 2016 WL 6892147, at *3 (E.D.N.Y. Nov. 22, 2016); *N.Y.C. Dist. Council of Carpenters Pension Fund v. Dafna Const. Co.*, 438 F. Supp. 2d 238, 242 (S.D.N.Y. 2006).

"Pursuant to its inherent equitable powers," a court may also award attorneys' fees "when the opposing counsel acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *BASF Wyandotte Corp*, 774 F.2d at 47 (quoting *F.D. Rich Co. v. U.S. ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)). To do so, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (cleaned up). In the arbitral context, an award of attorneys' fees requires that the non-movant has "refused to abide by an arbitrator's decision without justification." *BASF Wyandotte Corp.*, 774 F.2d at 47 (cleaned up).

Here, there is no statutory basis for a fee award, and the collective bargaining agreement does not provide for such. Petitioners instead argue that the Court should exercise its inherent equitable discretion to award fees, on the ground that Par Wall has resisted the Award "without justification." Pet. at 5–6 (quoting *BASF Wyandotte Corp.*, 774 F.2d at 47). Petitioners do not, however, adduce any evidence that Par Wall's refusal to pay the Award was either "in bad faith" or "entirely without color." *Eisemann*, 204 F.3d at 396. Although Par Wall's affirmative defenses and cross-motion for vacatur were untimely, there is no basis to find that they were made in bad faith. And a failure to pay an arbitral award does not by itself justify attorneys'

fees. *See, e.g.*, *In re Arb. Between Westchester Fire Ins. v. Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 228 (S.D.N.Y. 2005) ("Failure to pay is an insufficient basis for awarding attorneys' fees . . . ."); *Abondolo v. H. & M. S. Meat Corp.*, No. 07 Civ. 3870, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (same); *Great Atl. & Pac. Tea Co. v. Loc. Union No. 338, Retail, Wholesale & Dep't Store Union, AFL–CIO*, No. 95 Civ. 5255, 1996 WL 282074, at *3 (S.D.N.Y. May 28, 1996) (same).

Petitioners' reliance on three cases from this District is misplaced. Each involved respondents who both failed to (1) participate before the arbitral body and (2) oppose or otherwise respond to the petition to confirm. *See N.Y.C. Dist. Council of Carpenters Pension Fund v. E. Millenium Const., Inc.*, No. 03 Civ. 5122, 2003 WL 22773355, at *3 (S.D.N.Y. Nov. 21, 2003); *In Matter of Arb. between Soft Drink & Brewery Workers Union Loc. 812, IBT, AFL-CIO*, No. 95 Civ. 8081, 1996 WL 420209, at *3 (S.D.N.Y. July 25, 1996); *Hunt v. Commodity Haulage Corp.*, 647 F. Supp. 797, 799 (E.D.N.Y. 1986). Neither factor is present here.

The Court thus denies Par Wall's bid for attorneys' fees. *See, e.g.*, *Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d at 228; *Great Atl. and Pac. Tea Co.*, 1996 WL 282074, at *3.

***Costs***: As to costs, Federal Rule of Civil Procedure 54(d)(1) provides that, absent contrary authority, costs "other than attorneys' fees" should be awarded to the prevailing party. "[C]ourts routinely make awards for costs . . . in confirmation proceedings." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. TNS Mgmt. Servs., Inc.*, No. 13 Civ. 2716, 2014 WL 100008, at *4 (S.D.N.Y. Jan. 10, 2014) (cleaned up) (awarding costs where prevailing party provided specific figures in declaration). The Court thus awards costs associated with this lawsuit to the petitioners here, provided they submit appropriate documentation of such.

**D. Whether Petitioners Are Entitled to Interest on the Amount of the Award**

Petitioners also seek interest on the amount of the Award. *See* Reply at 17. The Court separately addresses pre- and post-judgment interest.

***Pre-judgment interest***: Awards of pre-judgment interest are generally discretionary. *See Rhodes v. Davis*, 628 F. App'x 787, 793 n.2 (2d Cir. 2015) (summary order). In the context of labor arbitration awards, however, there is a presumption in favor of awarding such. *See SEIU, Loc. 32BJ v. Dayton Beach Park No. 1 Corp.*, 2019 WL 120998, at *3 (S.D.N.Y. 2019) (citing *Waterside Ocean Navigant Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984)). Courts have found pre-judgment interest especially appropriate where the relevant agreement indicated that the arbitration award would be "final and binding." *See, e.g.*, *Riverbay Corp. v. Serv. Emps. Int'l Union, Local 32BJ*, No. 22 Civ. 10944, 2023 WL 3738984, at *10 (S.D.N.Y. May 31, 2023); *1199SEIU United Healthcare Workers E. v. Alaris Health at Hamilton Park*, No. 22 Civ. 531, 2022 WL 1080707, at *5 (S.D.N.Y. Apr. 11, 2022). Because the LMRA does not provide a pre-judgment interest rate, courts in this District use the New York statutory rate of nine percent per annum, measured "from the time of the award to the date of the judgment confirming the award." *1199SEIU United Healthcare Workers E.,* 2022 WL 1080707, at *5; *see N.Y.C. Dist. Council of Carpenters v. Tried N True Interiors LLC*, No. 20 Civ. 51, 2020 WL 1809323, at *4 (S.D.N.Y. Apr. 9, 2020); N.Y. CPLR §§ 5001–04 (McKinney 2026).

Here, Section 3(c) of Article 13 of the collective bargaining agreement provided that all "awards . . . including an award of fines or penalties, shall be final and binding upon the complainant and respondent and all interested parties." Agreement at 28. The Court thus finds pre-judgment interest appropriate as to the amount of the arbitration Award ($285,529.82), measured from when it issued (July 29, 2025) to the date judgment is entered in this case.

***Post-judgment interest***: Section 1961 of Title 28 "provides a uniform rate at which post-judgment interest is to accrue on civil money judgments recovered in federal district court." *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004); *see* 28 U.S.C. § 1961. Such "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield." 28 U.S.C. § 1961(a). Awarding post-judgment interest is "mandatory" in civil cases, *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (citation omitted), including "actions to confirm arbitration awards," *Trs. for the Mason Tenders Dist. Council Welfare Fund v. Euston St. Servs., Inc.*, No. 15 Civ. 6628, 2016 WL 67730, at *2 (S.D.N.Y. Jan. 5, 2016) (citing *Westinghouse*, 371 F.3d at 100–01). The Court thus grants petitioners' motion for post-judgment interest.

## CONCLUSION

For the above reasons, the Court grants petitioners' motion to confirm the Award and denies Par Wall's cross-motion to vacate it.

The Court denies petitioners' motion for attorneys' fees, but grants their motions for costs, pre-judgment interest, and post-judgment interest. Within one week of this decision, petitioners shall file a declaration setting out the costs they incurred in connection with this action, attaching appropriate documentation. Within one week thereafter, Par Wall will file a letter stating whether it disputes any of petitioners' claimed costs, and, if so, explain concretely which costs and on what basis. The Court will resolve any such disputes by separate order. Within one week of that order, petitioners shall submit a proposed judgment, consistent with the order as to costs and this decision.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: July 24, 2026
New York, New York